Good morning, everyone. We have three cases scheduled for argument today, and I understand that all counsel are present. So we'll hear argument first in number 21-1333, Rynasko v. New York University. Thank you. Masks are optional. So it is up to you. Mr. Obergefell. Thank you, Your Honor. May it please the Court, my name is Andrew Obergefell, and I represent the plaintiff, Helen Christina Rynasko, as well as proposed plaintiff, Casey Hall-Landers, in this appeal. Your Honor, before this Court, the District Court erred for two main reasons. One, in determining that Plaintiff Rynasko did not have Article III standing to bring her claims against NYU. And secondarily, by finding that the proposed amendment to add a student plaintiff that would eliminate any potential standing issues would be futile. And the reason that that determination was in error is because the student plaintiff, as well as the parents, both stated a cause of action for breach of an implied-in-fact contract. So how is Mom injured? Mom is injured because Mom is the one who paid the money to the university for the purpose of her daughter obtaining an on-campus and in-person education. It is the mother in this case who suffered the economic harm. So I lend $5,000 to my college roommate to buy a car, and it turns out to be a lemon. He buys it. Can I sue the dealer? And that's a hypothetical no, Your Honor. However, this case presents a different set of circumstances. And if this Court would look to the joint appendix at A230. What's the difference? The difference is here we have a situation where the student plaintiff authorized her mother to access her account for the purposes of making the payment of the tuition and fees directly to NYU for the purpose of her daughter obtaining an in-person and on-campus education. But her daughter remained liable for the fees, didn't she? Correct, Your Honor. But now we are getting into the question of whether Ms. Rinasco has standing to bring a contract. I don't see how mother was injured. Please help me understand that. Well, Your Honor, the mother was injured because she is the one who is ultimately out the money. And this Court has consistently held that financial harm is a paradigmatic form of injury in fact. And the error that the district court I mean, NYU didn't promise her anything. But when we're talking about the nature of the promises, we're talking about whether she has standing to enforce the contract. And this Court's decision in SM Kids v. Google makes the point that I'm trying to make. And that is separating the line between Article III standing, subject matter jurisdiction, and contractual standing. So in SM Kids, it was a situation where Google was arguing that the party bringing the suit against them is not a proper assignee under the contract and therefore had no right to bring a claim against them. And the district court found, yes, there's no Article III standing since they're not the person who has the ability to enforce the contract. This Court reversed that decision on Article III grounds and said that there's a difference between contractual standing and Article III standing. And that because the Article III standing runs to the subject matter jurisdiction of the case, it was a separate matter from the breach of contract. And I would just like to note one So if she had standing, what is it that she was entitled to? What is it that mother was entitled to that she didn't get? Our position, Your Honor, is that the payor for the education is entitled to a pro rata refund for the tuition and fees for the services that were not delivered. What was she entitled to get from NYU? What was mother entitled to get from NYU? She was entitled to her daughter receiving an in-person and on-campus education by logging into the student portal and paying the fee on behalf of her daughter. And I would just like to note, Your Honor, as Judge Bibas from the Third Circuit, who was sitting by designation in the District of Delaware in a case called Ninavaji, which is cited in our briefs, he found that the parents, in fact, had standing to bring breach of contract claims as well as undress enrichment claims. I have a factual question. I understand part of the fees and maybe some of the room and board were refunded. Yes, Your Honor. Not as much as you'd like, I guess. But the question is, who did they go to? Were they refunded to Emily somehow in her student account or to her mom? Well, they were refunded to the payor, in this case, Christina Rinasco. And that makes sense, Your Honor. Can you explain how that worked, like just the mechanics of it? What do you mean they were refunded to the payor? Well, Ms. Rinasco logged into the portal to make the payment. And through that payment mechanism, the refund flowed back to the person who made the payment. Imagine, for example, So she was credited, mom who paid was credited some amount of the refunded fees and room and board. Correct. She has not cashed that check that was sent to her. But she was credited for that amount of the fees. And, Your Honor, with the time remaining, I would like to just switch to the futility argument. And if this court has concerns about the parent's Article III standing or contractual standing, that issue could have been remedied and was remedied when we filed a motion to amend to add a student plaintiff who herself paid out of pocket for the in-person and on-campus education at NYU. And this is proposed plaintiff Paul Landers. Isn't the fact that student daughter is not, what are we to make of the fact that student daughter is not suing NYU? Well, Your Honor, I believe that- I mean, the logical, I mean, what do I know? But I would assume that if student daughter thought she didn't get something she was entitled to, she would have sued or joined her mother's suit. What do we make of the fact that she's absent from this litigation? Well, simply she wasn't the one who paid the money, Your Honor. It was her mother who paid the money and her mother who actually suffered the harm. So the person who paid the money is seeking the refund. But in just transitioning, Your Honor, to the implied and fact contract for the remainder of my time, you know, NYU here, if you look to the course catalog, and again- The cases that you're claiming were breached were made to the student, about urban campus, in-person education, etc., etc. They were all made to the daughter who's not here. Doesn't that strike you as a little odd? Well, Your Honor, in terms of the Second Amendment complaint, which the district court dismissed as futile, there was a student plaintiff added. We're now in the first- Your Honor, there were promises made by NYU directly to parents as part of their bulletins and course offerings, and I can point this court to an example. If you look at paragraph 54 of the Second Amendment complaint, it says, we get it, we're parents too, but don't worry, Mom and Dad, your son and daughter will be in great hands at NYU, and it all starts in the classroom. We're the largest independent research university in the United States, featuring world-class academics, faculty, and resources. So NYU is, in fact, and actively going out and communicating to the parents, understanding that, in many cases, an 18-year-old or a 17-year-old child is not going to be the one funding a $58,000 education at NYU. And they know that, and they're making promises directly to the parents about this in-person and on-campus education, the location in NYU. Did they ever promise the parents that they wouldn't shut down if the world shut down for COVID? Your Honor, we contend that the specific promise was that the education would be in-person and on-campus. Did they ever promise a mother or anyone that NYU wouldn't shut down if the world shut down for COVID? There are hundreds of millions of people who have had their lives upended by this pandemic, right? Correct, Your Honor. So did NYU ever promise them? Your Honor, our contention is that NYU promised an in-person education, but now the question of who should bear the loss in the case of a pandemic— Regardless of what happened. So the bubonic plague sweeps through lower Manhattan. NYU is still obligated to do in-person classes. Your Honor, this is— Or refund the money. Is that your position? Your Honor, my position is that NYU breached that promise, and that the students and the payers who paid it should be entitled to that refund, and that if it's a question of performance, now we're talking about a post-formation affirmative defense of impossibility or something like that, but that's not appropriate for resolution on the pleadings. Thank you. I beat up when you loathed the day. That's my job. Can I ask you a question about sort of the tuition and the fees? And in the complaint, they tend to be mushed together, but they're two distinct chunks of money with two distinct sets of promises that you would need to plausibly allege to go forward. So I want to focus on the fees. There's an allegation that sort of says there's this broad fee that may have gone to, and it lists a whole bunch of things. It's not at all clear which of those things you're alleging the fees were for, nor which of those things were actually denied. There's no allegation, for example, that the proposed additional plaintiff didn't have access to student health services, albeit remotely. Am I wrong about that? The allegation, Your Honor, is that as part of that TISH fee that's paid for the TISH school specifically, it's about $1,300, that part of that fee was for the on-campus facilities, such as the dance facilities, the physical therapy facilities that she was deprived of when her education was revoked. And there's allegations in the complaint that she no longer had access to the physical therapy, to the dance studio where her and her cohort would perform, and we think that that $1,300 fee, we allege that $1,300 fee was in part to fund those operations on campus. And so how do you get from, I guess that's the link I'm trying to figure out is what's the, what do you point to, to plausibly allege that that fee was for, included the ballet bar in the facility and the physical therapy? What document embodies those as elements of the promise in exchange for that fee? Yes, Your Honor. Unfortunately, we do not have the benefit of discovery to see exactly how that fee is calculated and to what degree. However, plaintiff paid the fee and her allegation is that in exchange for that fee, at least a portion of that fee was for those on campus services and activities that she- Right, no, and I understand. You may not know how they calculated it at the back end, but you know, if we're alleging that a promise was made, I'm trying to figure out what the resources that I should look to to understand the contours of that promise as it relates to that particular fee. Excuse me, Your Honor. I'm just trying to answer your question in as fulsome a manner as possible. So, Your Honor, I would point this court to paragraph 28 of the proposed second amended complaint, which alleges that both the tuition and fees that Hall-Landers paid were predicated or were for the on-campus services in the case. Now, I don't have documentary evidence at this point to establish that, but that is our allegation that this was part of that overall TISH fee that she paid. Right, I guess that's where I started. For the tuition, you point to lots of things and you say these collectively create the applied contract that we're now seeking to enforce. Yes, Your Honor. You're not pointing to anything underlying that allegation about the TISH fee? Other than the allegations stated, Your Honor, I do not have documentary evidence on the TISH fee. Thank you. That's helpful. You've reserved a couple of minutes for rebuttal. Yes, Your Honor. Thank you. Mr. Waxman. Thank you, Judge Parkin. May it please the court. Since Judge Daniel's ruling that under Rule 12b-6, it would be futile to add Ms. Hall-Landers would be dispositive as to both plaintiffs, even if the mother did have standing, I'll focus most of my argument on the 12b-6 notion unless the court has particular questions about standing. New York law is clear, unqualified, and emphatic. When a student pays tuition to a school, an implied in fact contract arises between the student and the school in which, again, New York law says that the school is obligated to provide the student the opportunity to earn credits pursuant to a degree. New York law is clear that any other obligation requires the plaintiff to identify, quote, specific language that guarantees specified services in the bulletin, catalogs, circulars, or handbooks of the school, and that the university's academic and administrative prerogatives cannot be impliedly limited by custom. What are you citing? I am citing to, and quoting, the state court decisions in Vogt, Keefe, Bader, Cooper, and Baldridge, and for the proposition that there can't be an implied limitation by a normal course of conduct for the Ford and Moss decisions, citing other New York authority. So why isn't the specific designation of some courses in the course catalog as being in person versus others being online? Why doesn't that satisfy the discrete additional promise beyond sort of the general reasonable indication? Yes, thank you, Judge Robinson. There have been, I want to say, close to 100 of these cases that have now been brought and decided, at least in the district courts. Not a single one of those cases, even the ones, even the few that allow an implied contract theory on tuition to proceed, has said that the designation of a room and a professor in which everyone expects the course will be taught constitutes a specific obligation under all circumstances to do so. That is, there is no court, certainly that I'm aware of, and I feel like if I read one more of these cases, my mind will turn into a bowl of spaghetti. There's not one case that has said that that indication, that the class is expected to be taught by Professor So-and-so in a particular room, constitutes a specific obligation, no matter the circumstances, to do so. I mean, there was every expectation at NYU and in private colleges, private secondary schools, private primary schools, that education, that pedagogy would take place in person, and here's the room that it's supposed to. The fact that NYU, in order not to jeopardize the health of its students, faculty, and staff... Is that because of the disclaimer, or because there's no obligation from the materials, the course guide, the catalog circulars that you were just talking about? It's both. I mean, even without the disclaimer, there is no support in New York or anywhere else in the country for the authority that because a school anticipates and says that a particular course will be held in this room, taught by this professor, that it is a breach of that implied contract if that doesn't occur, no matter the circumstances. Now, it is also true that under New York law and elsewhere, implied contracts have, as an immutable term, a duty of good faith and fair dealing. So we're not talking about a situation posited in my friend's brief, where NYU decides in the middle of March it's going to teach the rest of its courses in Zanzibar, or the philosophy department has decided no longer to teach and offer credits. Why wouldn't that be covered by the disclaimer? It says the sole discretion of the administration, and even if there were no pandemic, let's say NYU just wanted to save some money, budget was tight, let's go remote. Why wouldn't that be covered? I didn't mean to imply that it wouldn't. It certainly is covered by this disclaimer. My point is even if we hadn't had the disclaimer, which we do, it would not, in and of itself, there was not an unqualified obligation to provide in-person instruction. There is no case that holds that either the listing in a course catalog of room numbers and professors or the other materials that the plaintiff relies on, which are marketing materials about what the experience is going to be like going to NYU and downtown New York, etc., etc., constitute enforceable obligations. Can you help me with the disclaimer? I'm sorry if I've missed this. I know that it came in before the trial court in the context of the companion case. Where in the pleadings of this case that are before us in the motion to dismiss does the disclaimer come in? Where am I going to find in the complaint? Oh, the language of the disclaimer? Yes. It's referenced, I think, in the complaint, and it's certainly referenced in the motion to dismiss, but it is also in the joint appendix at page- Right, I guess what I'm trying to figure out- 128. Yeah, no, I'm familiar with the disclaimer. What I'm trying to figure out is just procedurally, since this is a motion to dismiss, whether that's extrinsic evidence that isn't technically before us or whether we can reasonably conclude that it's incorporated by reference in the complaint. I see. I see. It is certainly the latter. I mean, the allegations in the complaint itself, which don't dwell on the disclaimer, of course, basically say the enforceable promise comes from looking at the whole of the school bulletin, the school's marketing materials, and the school's handbook. And as we pointed out in our motion to dismiss, among many other things, the school's bulletin on the very first page, with nothing else on that page, is the disclaimer. So the argument is because the complaint says look at the materials as a whole, that kind of opens the door to something that looks kind of summary judgment-ish in some ways, where here's a bunch of other information that you should look at because they've invited you to look at the whole. My answer is yes, and it is also the case. You know, there are several courts that have held that where the issue is that the materials the university provided constitute an implied promise or an implied commitment, it is permissible, even if not identified in the pleadings, for the court to look at the materials that are alleged in toto to constitute the enforceable promise. I thought the disclaimer just applied to the Tisch School, which wouldn't cover Hall-Landers, is that right? The one that was, we have provided the identical disclaimer. On page A128 is for the College of Arts and Sciences, and on page A125 is for Tisch. The disclaimer is there for both schools. Let me ask you this. SM Kids, why doesn't that settle the standards? SM Kids is a decision of this court that basically held that, you know, of course, that just because there was no cause of action or standing to pursue, in that case, I think it was a trademark cause of action, doesn't mean that there isn't the same inquiry as whether there's injury in fact. In SM Kids, there was no doubt. I mean, SM Kids was suing because, I think it was Google, was using the Google's trade name and taking business away from SM Kids. And what this court said is, under the circumstances under which it is, I mean, nobody is disputing that SM Kids is being harmed. It's losing its business at the hands of Google. The fact that it may not have an enforceable trademark claim anymore doesn't answer the Article III question. Here, our submission is, and, you know, my friend has pointed to Judge Bibas' decision in the Ninavaji case, which is one of, I think, only two or three in the country that have ever held that a parent has standing. The fact of the matter is that the plaintiff in this case, Christina Renasco, was not injured in fact. Any injury that occurred, if any, would have occurred to her daughter. And the representation, by the way, that, you know, there was some unqualified check made out to Christine Renasco is nowhere supported in the record. My understanding is that the bursar's account of the daughter was credited and perhaps a check was issued. But there would have been no, I simply, there's nothing in the record, I don't know the answer for sure. But in any event, it's not dispositive. Christina Renasco is in the same position as any benefactor or any lender. Why would it be dispositive? I mean, it seems important if the mom got the money back for part of the refund, then that stands to reason that NYU is acknowledging some type of an injury for the payment of something that she didn't get what she thought she was getting, no? I don't think so. I mean, I can, if the court wishes, I can inquire of NYU. Well, it's not in the record, I guess, is your opinion. It's not in the record at all. And as to the fee question that Judge Robinson was asking, the only allegation whatsoever in this case about fees that were not paid back is in paragraph 65. Now I've confused myself. Here it is. No, that's not it. Paragraph 65 of the second amended complaint, which says that the only fees identified are the registration and service fees. Every single one of the listed services in that paragraph, the registrar, the student health center, the wellness exchange, the counseling service, Wasserman Center, which is career advice, information technology, and student life, were all provided to the students when there was a transition to remote learning. But even if that weren't the case, this allegation doesn't specify that there was a refund. I mean, NYU, in fact, refunded over $70 million to students. There was a refund. There was no identification of a particular service that was unavailable to the student when there was a transition to remote learning in this case. I understand Ms. Renasco's claim of injury to be a little bit different. It's not so much about the service that couldn't be provided live, which I understand is Emily's, would be Emily's claim of her injury. But Ms. Renasco's, as I understand the plaintiff's argument, is I didn't get what I paid for, and that seems to be a straightforward economic injury. She just as readily got what she paid for as in the hypothetical that Judge Parker raised. But she thought she paid for it. Let me put it that way. She thought she was getting a live education for her daughter. Right. Well, I'm leaving aside the fact that there was, in fact, no obligation under all circumstances in a global pandemic to a contract obligation to offer in-person instruction as opposed to safe remote learning with the same professors, the same syllabus, the same lectures. Sure, there may be defenses, but just at the injury stage. So, yes. For Article I purposes, she is in no different situation than the benefactor that Judge Parker recognized. That is, I'm going to give my daughter $5,000 to buy a used car. But that's not what happened here. She didn't give the money to her daughter who then made the payment. She went online herself as a third-party payer. So what you're saying is that there's an analogy here to someone who instead of saying, I'm going to give you the $5,000, let me go with you to the car dealer and I'll buy you this car. The salient difference here is that unlike buying a car or anything, any other tangible object, this is that what was paid for here was an educational experience that is not transferable from the mother to the daughter or vice versa and not assignable. The mother paid, whether she paid directly or indirectly, is of no circumstance. She got what she paid for. She paid for her daughter's last semester at NYU to allow her daughter to get the credits in order to graduate, and the daughter graduated in time. And the fact that the daughter has ostentatiously, in the original complaint, the First Amendment complaint, the Second Amendment complaint, failed to assert in there or in any other forum that she did not, in fact, get what she was obligated to pay for and her mother did pay for. Now, it's not all her mother. She also had loans and there were some other forms of assistance. But there is no claim in this case by anyone to whom this in-person instruction was anticipated to be provided who didn't get it. And that's our position on Article I standing. I mean, the mother certainly doesn't have any contract claim. And as to the unjust enrichment claim, we just asked, and the other quasi-contract claims, we just asked the court to follow the rulings, I think, of just about every one of the two dozen cases. Just one more follow-up question on that. Oh, yeah. If your defense on the standing on the contract claim is that there was no obligation to Ms. Renasco, what about on unjust enrichment? There isn't such an element. And so why would the alleged economic injury be sufficient to have standing for unjust enrichment? Well, I mean, this court, the New York courts are entirely clear, and all of the lower court cases that have been decided in this circuit, which I think has more than any other circuit, have said that you don't even get to an unjust enrichment claim unless the contract, which is also alleged, is either invalid, enforceable, or doesn't cover the same subject matter. The subject matter here being whether NYU had a duty to provide in-person instruction during the pandemic. And that is the case here. Both parties agree in this case that there was a contract implied. In fact, we just disagree about what if any term there was with respect to in-person instruction. So, you know, as Judge Furman and Judge Engelmeyer and many other judges in this circuit have said, there is no unjust enrichment claim where the allegations that undergo, that form the basis for the contract claim are identical to the ones for unjust enrichment. And in any event, even if that weren't the case, Judge Park, there's no allegation of injustice in the first instance in this case. Everybody agrees that it was just not to insist that the students be subjected to a risk of COVID through in-person instruction. Nobody disputes that NYU turned on a dime to obtain and create the means by which the same professors could offer the same course to the same students in the same sessions. And in any event, there is no non-conclusory allegation in this complaint that NYU was unjustly enriched. There is no allegation in this complaint that basically says that NYU saved money as a result of this. There just isn't. Can you talk a little bit about, you've talked a lot about the district courts around the country, and I have enormous respect for our colleagues on the trial bench. We're, as I understand it, only the second appeals court to face this in the DC circuit, having recently been the first. Can you talk a little bit about the Schaefer case? And I realize this is the subject of some letters that we've just gotten, and I haven't had a chance to fully digest, to be honest. Oh, sure. So, just as a point of information, cases have been argued under submission in the Seventh Circuit and the Fifth Circuit. But the DC Circuit, so far, is the only court to have ruled. Now, our position on Schaefer, which I'm not going to be able to do better than the letter we sent in response to the letter plaintiffs sent on Friday, is, number one, with all due respect to Judge Millett and Judge Edwards, I think is just wrong, even under the facts, the different facts of that case, there was no obligation in the relevant course materials and relevant bulletin, et cetera, et cetera, to provide in-person instruction no matter the circumstance. But in addition, there are some significant differences between what is pled in this case and what was determinative to the court's determination in that case. One is that there was, the court found important that there were options for online instruction, for which the universities paid much, charged much less, both at NYU and at GW. There is a no such option here. There is no online option at NYU for Tisch or for the College of Arts and Sciences. And there is no allegation that at NYU for those programs, none of which apply to Emily Renasco or Casey Hall Landers, that NYU charges less for tuition in an online program. And in fact, it does not. So there's no allegation whatsoever that what was important to the D.C. Circuit in Schaefer, which is that there both schools did have online options which were much less expensive. Nothing is alleged here, and in fact, it's not the case here. And second of all- I'm sorry, why does that matter, that there was an online option? I'm just not understanding. So my understanding of what the D.C. Circuit decided was, we don't really think this implied contract is going to apply. But given the representations that were made, and of course they didn't have our reservation of rights, but given the representations that were made, including the fact that there was an online option that was cheaper, we think that there could be a plausible claim that there was an enforceable promise that if we can only offer you online instruction instead of in-person instruction, you would only have to pay what we charge for online instruction. And that was a basis for finding that maybe, sort of, somehow, there's a contract claim here that would survive a motion to dismiss. And the last thing that was relevant, I think, if memory serves me, to the D.C. Circuit was the course of dealings. That is, the universities cited no precedent in which there had ever not been instruction in person. And in this regard, both the facts here and New York law are different. New York law provides, as I said at the outset, that there is, that a, I believe I'm quoting from the New York cases, the university's academic and administrative prerogatives cannot be impliedly limited by custom. That's substantive New York law. And there are, in fact, precedents reported in the case law in which, in the not-too-distant past, NYU has, in fact, fully suspended classes for public safety reasons. One was for the following 9-11, when the campus in lower Manhattan shut down for a couple of weeks, I believe. And the other, which is in a reported case called Basso, was when the university decided, maybe it is not that recent because it's when I was in college, after the Kent State shootings, the university decided that it was canceling classes for the rest of the term and would provide the students credit, provided that they pass the course based on the pedagogy that had been provided to date. So unlike in the D.C. cases, there is a precedent in the past for not just offering remote learning option, but in exigent circumstances, stopping classes entirely. And there is New York substantive case law that says in any event, no term of the contract implied in fact between a university and a student can be in any way impliedly limited or altered by custom. I hope that answers your question. Thank you. Thank you, Your Honors. Mr. Bergefell, you've reserved two minutes for rebuttal. Thank you, Your Honors. I'd like to start with the Schaefer opinion. Is there any allegation in any of your papers from student daughter that she was dissatisfied with the educational experience she got? In terms of the actual daughter, there's no allegations on behalf of the daughter, but she's not a part of the case. I'm sorry? But the daughter is not a plaintiff in the case. Only Ms. Finesco, the mother, is. And so there is then no basis in the record for us to assume that the student daughter was in any way dissatisfied with her educational experience at NYU. Is that correct? There's nothing in the complaint regarding the thoughts of the daughter. However, there is an allegation that Ms. Finesco, the parent, expected her daughter to obtain an in-person and on-campus education, which was not provided, and she paid money specifically for that purpose. But the daughter, for all we know, could have preferred that to having to get on the subway and go to NYU every day, right? We just don't know. There's no allegation in terms of the daughter's thought process. What is there to the mother's complaint if, in fact, the daughter was perfectly happy with her NYU education? She got her degree. She understood what NYU was going through, and she appreciated the steps they took to protect her and her fellow students and staff and so forth from pandemic injury. Candidly, Your Honor, I don't think that the daughter's thoughts or impressions as to NYU's conduct is relevant to her mother's complaint. I think Ms. Finesco- Her complaint is that she didn't, the essence of your complaint is the daughter didn't get a quality in-person educational experience, correct? Correct, Your Honor. And we have nothing, there's nothing in any of your pleadings or any of this record that supports that. We don't know what the daughter thought. Well, I don't think that the daughter's thoughts are dispositive of any of the claims in the complaint. I'm just curious about it. Then we can decide later whether it's immaterial or dispositive. I'm just trying to gather information from you, Counsel. Understood, Your Honor. And there's no allegation in the complaint regarding the daughter's thought process. However, I would just like to make a comment regarding the Schaefer decision from the D.C. Circuit and note that it is on all fours with this case on several grounds. The first is the implied in fact contract. My adversary pointed out a portion of the opinion regarding there being a discrepancy between the cost of the in-person and online education. However, that's really a question of damages. It's not a question of whether there's a specific promise. Whether the in-person education was in fact worth more or less than the online education is a question for damages for later in the case. It's not a question of whether there was a breach of a specific promise. And I would also note that the Schaefer decision went much further than that. It found that universities' communications contained numerous references to the benefits of on-campus instruction. And they found that as a basis to find an implied in fact contract, which is exactly what NYU did here. The bulletins repeatedly make reference to not only the location of campus, the on-campus facilities, but as it states in the course catalog, which is the very document that Plaintiff Hall-Landers, or proposed Plaintiff Hall-Landers would have gone to to register for her classes, it literally says instruction mode in person, meaning that there is an expectation, a specific representation by NYU that the courses in which she was enrolling would be- Well, it might also have said room 305 at 3 p.m. and they had to move things around. Does that make a contractual obligation? Your Honor, there is a- Obviously the university has some latitude to move the location of courses for a day, or if they have to use a different room or something like that, obviously that would be something that would be reasonably expected. However, to fundamentally change the nature of the bargain for education for half of a semester and not provide any refund for the value of that full tuition, we think is a much different case than the university simply just changing a room. And this kind of bleeds a little bit into the reservation of rights argument that my adversary made. And the Schaefer decision from the D.C. Circuit is also on point in analyzing a very similar reservation of rights provision that the universities in that case had. And the court rejected it because it found there was no force majeure clause and there was nothing, no language in the reservation of rights which stated or put the students on notice that in the case of an emergency, they would be the ones who would have to bear the full risk of loss in the case of an emergency. And the Schaefer court said that that generalized disclaimer is not sufficient to overcome a specific promise. And here is unequivocally a specific promise in the course catalog, in the very document, a specific promise for in-person education. Now, whether NYU has a justification defense or some post-formation defense for not following through on that promise is a separate matter altogether. But here we are on the question of the pleadings. This is not— How can we get there if we have no idea whether the student daughter liked or didn't like her experience? Isn't that the whole linchpin of your lawsuit? We get there, Your Honor, because of the— You know, she is, as was noted, ostentatiously absent. We get there, Your Honor, because proposed plaintiff Hall Landers would cure any defect in that regard. So that's— Let's put her aside for a minute. Let's stay with your main complaint. If daughter was perfectly happy with her experience, would mom have standing? Mom has standing because she paid the money for what she expected to be an on-campus and in-person education as a matter of Article III. Even though the recipient said, I got an outstanding education? Your Honor, the allegation would be that the parent would be dissatisfied because they paid the tuition for a service that was not what they expected their child to obtain. And respectfully, our argument would be that the thoughts of the student in that regard are not necessarily material to the substantive claim because it's the mother who's bringing the claim for the money that she paid. All right, so just to bring that full circle, if the daughter were entirely satisfied with their education, no problem with the way NYU protected us during the pandemic, mother could still sue? Yes, Your Honor, that's our argument. Your Honors, I would just like to just also make a point in regards to the unjust enrichment claim as well. You know, if this Court should find that there's Article III standing but no contractual standing for Ms. Rynaska, that does not end the inquiry on her claim. In that case, there would be no contract between Ms. Rynaska and NYU, but for an unjust enrichment claim, there is no requirement for privity of contract. And that is, of course, black letter law under New York law. It just requires a relationship that is not too attenuated. And here, there is not an attenuated relationship because NYU knows that her mother logged onto her account for the purpose of paying her tuition and fees. And even if that does not create a contractual basis for standing, it certainly creates Article III standing and at least the opportunity to press an unjust enrichment claim under those circumstances because there is no contract to which it would be duplicative. Counsel, am I right that if we conclude that NYU is right as to the futility of amendment, then it doesn't matter whether the mom has standing because that means the merits of her case goes well. And if we conclude that amendment wouldn't be futile, that there is a plausible claim, then it doesn't matter if mom doesn't have standing because the case then goes forward. That is absolutely correct, Your Honor. If this court should find that there is a basis to find an implied in fact contract or if either plaintiff, Paul Landers, or Plaintiff Rynaska, could assert any substantive claim plausibly for breach of contract, breach of implied contract, or unjust enrichment, then by definition, the community complaint would not have been futile in that situation. I'm just trying to figure out why, yeah, never mind. Thank you. Thank you, Your Honor. Thank you, Counsel. We'll take the case under advisement.